[Cite as *Israel v. Ohio Dept. of Job & Family Servs.*, 2025-Ohio-5807.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHANNON N. ISRAEL | Case No. 25CAE070054 |
| Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 25 CV D 04 0436 |
| DIRECTOR, OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, ET AL | Judgment:   Affirmed |
| Appellees | Date of Judgment Entry:December 30, 2025 |

**BEFORE:**   CRAIG R. BALDWIN, P.J., WILLIAM B. HOFFMAN, J., KEVIN W. POPHAM, J.;   Appellate Judges

**APPEARANCES:** Shannon N. Israel, Pro Se Appellant; Douglas R. Unver for Appellee ODJFS; Lauren A. Kemp for Appellee JPMorgan Chase Bank, N.A.

OPINION

*Popham, J.*

{¶1}   Appellant Shannon N. Israel appeals the July 11, 2025, decision of the Delaware County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission ("UCRC").   Appellees are the Director of the Ohio Department of Job and Family Services ("ODJFS") and JPMorgan Chase Bank, N.A. ("Chase").   For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}   Chase terminated Israel effective August 31, 2024.   On September 23, 2024, Israel received $94,284.62 in severance benefits.   Chase made the severance

payment in Israel's paycheck covering the work weeks of August 16-31, 2024, and labeled it as "Lump Sum Sev[erance] Pay."

{¶3} On September 22, 2024, Israel applied for unemployment compensation benefits. On October 4, 2024, ODJFS issued an initial determination awarding Isreal unemployment compensation benefits in the amount of $707.00 per week for the benefit year beginning on September 22, 2024. The initial approval of unemployment compensation benefits lists Chase as the employer and provides the "qualifying weeks" of employment as April 1, 2023, to March 31, 2024.

{¶4} On October 16, 2024, ODJFS issued a determination informing Israel that she was overpaid benefits for 2 weeks to which she was not entitled ($707 per week for a total of $1,414), because she "received deductible compensation for the time period 9/22/2024 through 12/27/2025," and, "as a result, [appellant's] weekly benefit amount may be reduced or denied for that period per Ohio Revised Code Section 4141.31 and/or Section 4141.312."

{¶5} On February 11, 2025, Israel appealed the October 16th determination. The Hearing Officer determined her appeal was timely because Israel did not receive notice of the October 16th determination until past the appeal deadline. On February 26, 2025, ODJFS issued a redetermination affirming the initial determination. On February 26, 2025, Israel appealed the redetermination. On February 28, 2025, jurisdiction was transferred to the UCRC.

{¶6} On March 19, 2025, Hearing Officer Harmon conducted a telephone hearing, during which Israel was unable to recall many things, including when she filed her application for benefits, or if she ever signed up for email correspondence with ODJFS.

{¶7}    Israel explained that, when she initially called ODJFS, they told her that her benefits would be reduced due to her severance pay.  However, the ODJFS employee allegedly told Israel this problem would be resolved if she waited until January of 2025 to file for unemployment compensation.  However, somehow her application was filed in September of 2024, and Israel was unsure of what she filed or how that happened.

{¶8}    Israel testified she worked at Chase from October 3, 2022, to August 31, 2024, as HR Control Manager – Vice President.  She received severance in the amount of $94,284.  Israel stated she did not receive any information that allocated the severance amount to any specific time period, despite receiving a "big packet" of severance documents.  Rather, the severance was paid in a lump-sum payment that was not allocated to any specific time period.

{¶9}    On April 1, 2025, Hearing Officer Harmon issued a decision affirming ODJFS' redetermination.  Harmon made the following findings of fact:  the separation agreement entered into by Israel and Chase did not allocate the severance to any specific time period; Israel's severance was a lump-sum payment of $94,284; Israel's average weekly wage was $3,308 based on her last pay stub; based on Israel's average weekly wage, the separation pay of $94,284 was the equivalent of 28 full weeks of regular income, with a remainder of $1,660 for a 29th week of regular income; Israel's weekly unemployment benefit amount was calculated to be $707; and, based on allocation of Israel's severance pay, her regular income exceeded her weekly benefit amount for 29 weeks following her separation from Chase (from September 1, 2024, through March 15, 2025).

{¶10} In addition, Harmon based her affirmance of ODJFS' redetermination on the following reasoning: payments made to employees in return for their agreeing to a separation from employment shall be deemed to be separation pay, and shall be deductible under R.C. 4141.31(A)(4); Israel received separation pay in the amount of $94,284.00 for agreeing to separate her employment with Chase effective August 31, 2024; benefits otherwise payable for any week shall be reduced by the amount of separation or termination pay paid to an individual at the time of separation; unless there is a provision in the labor-management agreement, or in the employer's policy, which limits or prevents allocation of separation or termination pay, the employer may allocate that pay; if the employer has the right to allocate that pay but does not do so, ODJFS or the UCRC shall allocate the pay in an amount equal to the individual's average weekly wage to the first and each succeeding week following separation from employment until the payment is exhausted; here, there was no agreement or evidence in the record of intent to allocate the separation pay to any date specific; based on Israel's average weekly [wage] rate of $3,308, allocation of separation pay of $94,284 is the equivalent of 28 weeks of regular income with a remainder of $1,660 for the 29th week; Israel was ineligible to receive unemployment benefits from September 1, 2024, to March 15, 2025; Israel is also required to serve a one week waiting period after filing a new application for unemployment compensation; and the Director's overpayment order of $1,414 is affirmed pursuant to R.C. 4141.35(B).

{¶11} On April 1, 2025, Israel filed a request for review by the UCRC. On April 9, 2025, the UCRC issued a "Decision Disallowing Request for Review", wherein the UCRC stated, in pertinent part "[b]enefits otherwise payable for any week shall be reduced by the

amount of renumeration received with respect to such week in the form of: Separation or termination pay. 4141.31(A)(4) O.R.C. If there is no designation of the period for the payments made to an individual, then an amount equal to the individual's normal weekly wage shall be applied to each week following separation until the amount paid is exhausted. 4141.31 (A)(5) O.R.C."

{¶12} Israel next appealed the matter to the Delaware County Court of Common Pleas, and the parties filed briefs. On July 11, 2025, the common pleas court issued a final judgment entry – citing R.C. 4141.31(A)(4) for the proposition that separation pay is deductible from an employee's weekly unemployment-compensation benefit, and for the statutory default rule regarding a lump-sum payment. The court determined that Chase did not allocate Israel's severance pay to any particular period and merely because Chase paid that lump-sum payment in Israel's final pay period does not mean that Chase allocated the payment to that pay period. The court also found the UCRC's decision was not unlawful, unreasonable, or against the manifest weight of the evidence and, thus, affirmed the UCRC decision.

{¶13} Israel appeals the judgment of the Delaware County Court of Common Pleas. Israel did not specifically denote an assignment of error in her appellate brief. However, the conclusory paragraph of Israel's brief sets forth the following, which we interpret as her assignment of error:

{¶14} "I. APPELLANT URGES THIS COURT TO RECONSIDER WHETHER COMPETENT, CREDIBLE EVIDENCE DOES EXIST TO SUPPORT A LAWFUL AND REASONABLE REVERSAL OF THE UCRC DETERMINATION BASED ON PROPER ALLOCATION OF THE SEVERANCE PAY."

*Standard of Review*

{¶15} R.C. 4141.28(H) governs the standard of review to be applied by the court of common pleas and subsequent reviewing courts in unemployment compensation cases. The statute states, "if the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."

{¶16} Our standard of review is the same. *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). That is, the court of appeals must also determine whether the commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. *Id.* We are required to focus on the decision of the UCRC, rather than that of the trial court. *Huth v. Dir., Ohio Dept. of Job and Family Servs.*, 2014-Ohio-5408, ¶ 19 (5th Dist.).

{¶17} Appellate courts are not permitted to make factual findings or to determine the credibility of the witnesses; but the reviewing court does have the duty to determine whether the UCRC's decision is supported by the evidence in the record. *Tzangas* at 696. This leaves the board's role as a factfinder intact. *Id.* Where the UCRC might reasonably decide either way, this Court has no authority to upset the UCRC's decision. *Bonanno v. Ohio Dept. of Job & Family Servs.*, 2012-Ohio-5167, ¶ 15 (5th Dist.); *Williams v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-2897, ¶ 20. "Every reasonable presumption must be in favor of the [decision] and the findings of fact [of the Review Commission]." *Bonanno* at ¶ 15.

I.

{¶18}  In her sole assignment of error, Israel argues that competent and credible evidence does not exist to support the UCRC's determination regarding the allocation of appellant's severance pay[1].

{¶19}  R.C. 4131.31(A)(4) provides, "[b]enefits otherwise payable for any week shall be reduced by the amount of remuneration or other payments a claimant receives with respect to such week as follows: … (4) Except as otherwise provided in division (D) of this section, remuneration in the form of separation or termination pay paid to an employee at the time of the employee's separation from employment …".  R.C. 4131.31(A) additionally states:

> If there is no designation of the period with respect to which payments to an individual are made under this section then an amount equal to such individual's normal weekly wage shall be attributed to and deemed paid with respect to the first and each succeeding week following the individual's separation or termination from the employment of the employer making the payment until such amount is exhausted.

{¶20}  Israel does not dispute that the lump-sum payment was separation pay as contemplated by R.C. 4141.31(A).  Pursuant to the plain language of R.C. 4141.31(A), unemployment compensation benefits to which a claimant is otherwise entitled must be reduced by certain remuneration received, such as "separation or termination pay."  *Stoll v. Owens Brockway Glass Container, Inc.*, 2002-Ohio-3822, ¶ 16 (6th Dist.) ("it is undisputed that unemployment compensation benefits to which a claimant is otherwise

---

[1] By "disallowing" Israel's Request for Review, the UCRC effectively affirmed the ODJFS hearing officer's redetermination decision holding that ODJFS properly denied unemployment benefits by allocating Israel's severance pay to 28 weeks' full income (and one weeks' partial income) in an amount exceeding her weekly unemployment benefit, thus precluding unemployment benefits for that period of unemployment.

entitled (such as separation or termination pay), must be reduced by certain remuneration received"); *Toms v. Ohio Unemployment Comp. Review Comm.*, 2008-Ohio-4398 (2nd Dist.).

{¶21} Israel contends the "default" provision contained in R.C. 4141.31(A) (if there is no designation of the period for the payments made to an individual, then an amount equal to the claimant's normal weekly wage shall be applied to each week following separation until payment is exhausted) does not apply in this case because a paystub she provided to the ODJFS Hearing Officer shows Chase allocated her severance pay to the weeks of August 16, 2024 through August 31, 2024 (the dates she last worked), or, alternatively, to the date that Chase paid her the severance on September 23, 2024. Thus, Israel believes this paystub qualifies as a "designation of the period for the payments made" to her and thus, the decision of the UCRC was unlawful, unreasonable, and against the manifest weight of the evidence.

{¶22} We find there is competent and credible evidence to support the decision of the UCRC, such that the decision is not unlawful, unreasonable, or against the manifest weight of the evidence. Israel did not introduce the severance agreement into evidence during the administrative process, but she specifically testified at the hearing that nothing in her severance agreement with Chase allocated the severance pay to any specific period of time.

{¶23} As to Israel's argument regarding the paystub, the paystub lists the "pay period begin date" as August 16, 2024, and the "pay period end date" as August 31, 2024. It also states that September 23, 2024, is the "pay date." While the paystub indicates *when* the lump-sum payment was made, it is not evidence of Chase allocating the severance

pay to those specific weeks. Merely because Chase made a lump-sum payment in appellant's final pay stub does not allocate the payment to that pay period, particularly when Israel testified the severance agreement was silent regarding allocation.

{¶24} In her appellate brief, Israel argues, for the first time in this process, that Chase has "historically followed a current payroll cycle," and thus Chase allocated the severance pay to the weeks covering her final paycheck. However, this new factual allegation was not before either the trial court or the UCRC when they rendered their decisions. "An appellate court is constrained to review only those matters contained in the record." *Cincinnati Ins. Co. v. DTJ Enters.*, 2015-Ohio-843, ¶ 33. Accordingly, we cannot consider this factual allegation.

{¶25} In the absence of evidence that Chase allocated Israel's pay to a particular period, the "default" provision contained in R.C. 4141.31(A) applies, such that an "amount equal to" Israel's "normal weekly wage shall be attributed to and deemed paid with respect to the first and each succeeding week following [appellant's] separation or termination from employment of the employer making the payment until such amount is exhausted." Thus, the decision of the UCRC that Israel's severance pay must be allocated to the 29 weeks following her separation or termination, rendering her ineligible for benefits until after March 22, 2025, was not unlawful, unreasonable, or against the manifest weight of the evidence. Further, the determination of the UCRC that Israel's ineligibility for benefits until after March 22, 2025, resulted in an overpayment of $1,414 is not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶26} We find there is competent and credible evidence to support the UCRC's decision. Israel's assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed.

Costs to Appellant.


By: Popham, J.

Baldwin, P.J. and

Hoffman, J., concur